209 P.2d 859

**COLE et ux. v. ATKINS.**

No. 5077.

Supreme Court of Arizona.

July 18, 1949.

Rehearing Denied Sept. 21, 1949.

Stover & Martin, Tucson, for appellants.

James Elliott Dunseath, Tucson, for appellee.

BERNSTEIN, Superior Judge.

This is an appeal by the defendants in the lower court, now appellants, from a judgment in favor of the plaintiff, appellee herein, awarding the plaintiff special damages, arising from an alleged breach of contract to sell real property in the Homer Brown Addition to the Townsite of Ajo, Pima County, Arizona.

The amended complaint of the plaintiff set forth a contract between the defendant and one Doran for the sale by defendant of a house and lot in said addition and the purchase by plaintiff of Doran's interest in said contract. It further alleges the completion by plaintiff of the payments under the contract; that the plaintiff made demand upon defendant for an instrument of conveyance transferring the title of the property to her; and that the defendant failed and refused to make and deliver to the plaintiff a conveyance of the legal title of the property. The amended complaint ·further set forth that the plaintiff intended to buy and the defendant intended to sell Lot 7, Block 4 of said addition instead of Lot 7, Block 14 described in said contract. And, also that the mistake as to the description in said contract was the mutual mistake of the parties; that the defendant had failed and refused to make and deliver to the plaintiff a conveyance of title to Lot 7, Block 4, and could not make such a conveyance, as defendant did not own the same. It was further alleged in the amended complaint that after plain-

tiff had made payment of the balance due under the contract, Homer Brown, who claimed title to Lot 7, Block 4, demanded from plaintiff possession of said property; that plaintiff purchased another lot in Ajo and moved the house located on Lot 7, Block 4 to said new lot as a result of said representations and demands; and the failure of defendant to convey to her title to said property. That plaintiff incurred an expense of $727.48 in moving the house was a further allegation.

Defendant moved to dismiss the amended complaint upon the ground that it did not state a claim upon which relief could be granted, which motion the trial court denied.

The facts established by the evidence are that on March 23, 1942 the defendant Cole entered into said contract with Doran for the sale of a house and lot in said addition for the agreed sum of $1,269.92, payable $80 cash and $30 per month until paid in full, with interest at 8 per cent per annum. This lot was erroneously described in the contract of sale as Lot 7, Block 14 of the Homer Brown Addition, the lot which the defendant Cole intended to sell to said Doran, and which Doran intended to purchase, being Lot 7, Block 4 of said addition. The defendants did not have title either to Lot 7, Block 4, or to Lot 7, Block 14. The undisputed fact is that the mistake as to the description in the sale agreement was mutual.

On July 20, 1944, Doran and wife with the consent of defendant assigned their rights in the contract of purchase to plaintiff. Plaintiff assumed and commenced to make the monthly payments on this contract, taking actual possession of this property on that date.

Plaintiff continued to occupy the property and to make the monthly payments. On June 15, 1946 plaintiff made to defendant the monthly payment of $30 and, at that time, was advised by defendant that a payment of $41.32 would pay the balance of the contract. On the next day, June 16, 1946, plaintiff was informed that the lot upon which she was living and upon which she had been making payments was not Lot 7, Block 14 as described in the contract of purchase, but was Lot 7, Block 4, and that the legal title to said Lot 7, Block 4 was in Homer Brown. Plaintiff, however, on June 17, 1946, paid to defendant the sum of $41.32, which completed payment in full for the property. The total amount paid to the defendant for the property under the contract, including payments and interest, was $1,661.32. At the time of making the final payment, plaintiff, in substance, demanded that the defendant straighten out the title and perform the contract as intended by the parties by giving her good title to Lot 7, Block 4.

The evidence was conflicting as to the nature of the instrument of conveyance offered plaintiff by defendant, but as to

this, we adopt the findings of the trial court that the title offered by the defendant was not a merchantable title.

During the latter part of June, 1946, plaintiff removed the dwelling located on Lot 7, Block 4 to another lot in the Town of Ajo, which had been purchased by plaintiff for $150.

After trial of the action, the trial court found that, by reason of the failure of the defendant to convey a sufficient marketable title to plaintiff, she was damaged in the amount of $643.14 necessarily expended by her in removing the dwelling house from said premises to its new location, including the sums of: $150 for the purchase of a lot; $100 for moving said house to its new location; $343.14 for improvements made necessary for the repair of said house, by reason of damage done to it in the removal thereof; $50, the value of the lot which plaintiff purchased from defendant. Upon these findings the court entered judgment for the plaintiff in the sum of $643.14.

By appropriate assignments of error appellant claims that the trial court erred in denying his motion to dismiss plaintiff's amended complaint; in refusing to dismiss said amended complaint and in not entering judgment in favor of the defendant, by reason of the failure of the amended complaint to set forth, and of the evidence to prove, facts sufficient to constitute a basis for any recovery of damages by the plaintiff. Appellant contends that, since plaintiff, by moving the house from the lot, put it out of her power to restore the property purchased by her to the defendant in exchange for the return of the purchase money paid, she could not recover the purchase money and, further, that the items of damages awarded to plaintiff by the trial court did not, under the amended complaint or the evidence, constitute proper elements of damages arising from the failure of defendant to convey title to the lot.

If a person contracts to sell property to which he has no title and he, by reason of mistake or other cause, is unable to convey good title to the purchaser upon payment of the purchase price, the authorities are uniform in holding that the purchaser as a cause of action for the return of the purchase money that he has paid, with interest. McCarrell v. Turbeville, 51 Ariz. 166, 75 P.2d 361; 55 Am. Jur., Vendor and Purchaser, Sec. 541, p. 935; 66 C. J., Vendor and Purchaser, Sec. 1559, p. 1474. However, it is well settled that before an action may be maintained by the vendee to recover the purchase price he must first surrender or offer to surrender the possession of the property to the vendor and place or offer to place the vendor in status quo. Obviously the vendee cannot, under any circumstances, retain the property or any portion of it and at the same time recover the purchase money paid. Francis v. Shrader et al., 38 Cal.App. 592, 177 P. 168; 66 C. J., Vendor

and Purchaser, Secs. 1605-1608; 55 Am. Jur., Vendor and Purchaser, Sec. 542, p. 936.

When the plaintiff in the latter part of June, 1946, which was a short time after the discovery by the parties of the mistake in the description, removed the dwelling house from the lot to another lot purchased by her in the Town of Ajo, she placed herself in a position where she could not claim a return from the defendant of the purchase money.

Having precluded herself from recovery of the money paid by her under the contract, is the plaintiff entitled to any other relief? For two reasons, the plaintiff could not recover ·the usual general damages for loss of bargain. In the first place, there is nothing in the amended complaint or in the evidence upon which such damages could be predicated and, in the second place, under what we believe to be the prevailing and the better rule, such damages are not recoverable in a case where the vendor is unable to furnish good title, unless the vendor acted in bad faith, which was not the case here. Morgan v. Bell, 3 Wash. 554, 28 P. 925, 16 L.R.A. 614; 55 Am.Jur., Vendor and Purchaser, Sec. 557, p. 951; Davis v. Buery, 134 Va. 322, 114 S.E. 773, 115 S.E. 527; Spruill v. Shirley, 182 Va. 342, 28 S.E.2d 705; Thomas v. Palmer, 49 Nev. 438, 248 P. 887.

This leaves the question: Was the plaintiff entitled to the special damages awarded her by the judgment of the lower court?

In Sharp v. Western Union Telegraph Company, 39 Ariz. 349, 6 P.2d 895, 897, 80 A.L.R. 293, in dealing with the matter of damages there recoverable, we said:

"The question is as to whether the damages suffered under such circumstances are proximately traceable to defendant's dereliction, and whether they were within contemplation of the parties at the time of making the contract. * * *

"For a breach of its duty to transmit and pay money to plaintiff as agreed, plaintiff is entitled to such damages as naturally arose from the breach, or such as might reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of such breach. * * *

"It is quite evident plaintiff's loss resulted by reason of circumstances for which defendant was not responsible, and, moreover, circumstances of which defendant had no knowledge or information, and certainly not in the contemplation of the parties. * * *"

The following rule is laid down in 66 C. J., Vendor and Purchaser, Sec. 1700, p. 1576: "* * * the damages recoverable by the purchaser are such as arise as the fair, legal and natural result, under all the circumstances, of the vendor's breach, or, as sometimes laid down, such damages as are the natural and proximate result of the breach and as may reason-

ably be supposed to have been within the contemplation of the parties, when the contract was made, as a probable result of the breach. * * * No recovery can be had, however, for speculative or remote damages. * * *"

In 55 Am.Jur., Vendor and Purchaser, Sec. 565, p. 959, it is said: "To be recoverable, the special damages must be a proximate result of the vendor's breach of his contract. Thus, expenses incurred by the purchaser in preparing to build on other lands owned by him with the use of a building on the land sold, the benefit of which is lost to the purchaser by reason of the failure of the vendor to convey, are too remote to be recoverable."

In Cape Girardeau & C. R. Company v. Wingerter, 124 Mo.App. 426, 101 S.W. 1113, 1115, defendant contracted to convey a piece of land over his farm for a railroad right of way. When he, thereafter, refused to execute the deed, the railroad company condemned the land and in a subsequent suit for breach of contract attempted to recover the cost of the condemnation as special damages resulting from the breach of contract. In ruling on the question, the court said: "* * * Certainly the award of damages and expenditures of cost in the condemnation proceeding instituted by the plaintiff on its own initiative, and thus self-imposed, neither flows naturally as a result of the breach, nor is it reasonable to say that such voluntary action on the part of the plaintiff, and the resulting award and cost therein, were within the contemplation of the parties at the time of making the contract as a probable result of its breach. * * *"

And in the case of Hickman v. Johnson, 36 Cal.App. 342, 178 P. 145, 147, there was involved a suit upon a contract to sell land where the vendor had sold a water right with the land. The vendee discovered that the vendor had no water right, but nevertheless vendee planted a crop which died for lack of water and the loss of the crop was claimed as special damages. The California District Court of Appeals, in refusing this item of special damages, said: "* * * it is apparent that this element of damage can not be considered for the reason that, according to the allegations of the cross-complaint, the defendant, before planting said crop, had complete knowledge that plaintiff did not own the said Dallas ditch and could not therefore convey any interest in it to the defendant, * * * Therefore, if defendant, with knowledge of these facts and the failure of plaintiff to complete its agreement, planted a crop, incurring the cost thereof, and took a chance of having a crop without irrigation, it must be apparent that any loss thereby incurred must be chargeable to his own want of care, no matter how remiss might have been plaintiff in its conduct toward the defendant. * * *"

In our opinion the items of damages awarded to the plaintiff by the trial court

do not fall within the class of special damages allowable under the authorities. They cannot be said to have been the natural or proximate result of the defendant's breach of the contract, and they cannot reasonably be supposed to have been within the contemplation of the parties when the contract was made as a probable result of the breach. All the special damages awarded, with the exception of the item of $50 found to have been the value of the lot on which the house stood, arose from and were the result of voluntary acts on the part of the plaintiff in purchasing another lot and in causing the house to be removed. Surely these acts of the plaintiff, and any damages resulting or claimed on account of them, cannot be said naturally or proximately to have resulted from a breach of the contract or to have been contemplated as a probable result of such breach.

The judgment is reversed with directions to dismiss plaintiff's amended complaint.

UDALL and DE CONCINI, JJ., and DONOFRIO, Superior Judge, concur.

LaPRADE, C. J., being ill, and PHELPS, J., having been the trial judge, the Honorable CHARLES C. BERNSTEIN and Honorable FRANCIS J. DONOFRIO, Judges of the Superior Court of Maricopa County, were called to sit in their stead.

STANFORD, J., not participating in this opinion.